In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1326

JEROME T. DAVIS,

*Petitioner-Appellant,*

*v.*

BOB HUMPHREYS, Warden, Kettle Moraine Correctional Institution,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 12-CV-680 — **Patricia J. Gorence**, *Magistrate Judge.*

ARGUED MARCH 5, 2014 — DECIDED APRIL 1, 2014

Before EASTERBROOK, MANION, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In Joseph Heller's *Catch-22*, Yossarian wants to stop serving as a bombardier during World War II. Insanity is a reason for being grounded, and Yossarian tries to convince Doc Daneeka that he is insane—but to ask proves sanity, because an insane person would want to fly more missions. Catch-22. Jerome Davis, who is in

prison following a guilty plea, wants federal collateral relief but did not seek it until the year allowed by 28 U.S.C. §2244(d) had expired. Equitable tolling can allow a belated application. *Holland v. Florida*, 560 U.S. 631 (2010). Demonstrating entitlement to tolling requires a motion, which Davis made. He maintains that his mental limitations excuse untimely filing. A magistrate judge found, however, that anyone able to make such a motion has shown mental competence and disqualified himself from tolling. Catch-22.

The federal judiciary should avoid using Catch-22. For all this record shows, Davis could make a motion only because someone else drafted and mailed it for him. No one doubts that, if the "someone else" were a lawyer who accepted the case after the year had passed, then the lawyer's skills would not be imputed to Davis and prevent application of a tolling doctrine. That the "someone else" was a fellow prisoner—as Davis, now represented by counsel, maintains—should not make a difference. Tolling depends on the competence of the prisoner or an agent engaged before the year is up; an agent of any kind retained after the time has run does not retroactively prevent tolling. So the ground of the district court's decision is untenable.

This conclusion does not itself make the application timely. We must ask three more questions: First, is mental incompetence ever enough to justify equitable tolling of the time provided by §2244(d)? Second, if the answer is yes, how incompetent is incompetent enough? Third, does Davis's mental condition meet that standard?

At least three circuits have held that mental incompetence can satisfy the standard for tolling established in *Holland*. See *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011); *Bills v.*

*Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010); *Riva v. Ficco*, 615 F.3d 35, 40 (1st Cir. 2010). Before *Holland*, several other circuits had reached the same conclusion. See, e.g., *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010); *Hunter v. Ferrell*, 587 F.3d 1304, 1309–10 (11th Cir. 2009). We agree, though not because of any language in §2244(d) or the rest of the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), of which §2244(d) is a part. The Supreme Court treats tolling as one of those background understandings in American law that applies unless a statute modifies or excludes the doctrine. See *Lozano v. Montoya Alvarez*, No. 12-820 (U.S. Mar. 5, 2014), slip op. 7–8; *Young v. United States*, 535 U.S. 43, 49–50 (2002). This is as true of details as it is of whether tolling is available at all. Thus we inquire whether mental incompetence supports tolling other federal statutes of limitations.

Although the Supreme Court has never addressed that question, courts of appeals regularly hold that mental incompetence justifies the tolling of federal periods of limitations. *Barett v. Principi*, 363 F.3d 1316, 1319–20 (Fed. Cir. 2004), collects decisions from most circuits. Our own leading decision is *Miller v. Runyon*, 77 F.3d 189 (7th Cir. 1996), which dealt with tolling the periods for federal employment-discrimination statutes. That there seem to be more recent decisions concerning mental incompetence and tolling under the AEDPA than under all other federal statutes put together may reflect the fact that outside prison an incompetent person often has a guardian, who must adhere to statutory time limits. Mentally incompetent persons in prison, by contrast, usually do not have the benefit of a guardian who attends to their legal problems—nor are prisoners who want to seek collateral relief automatically entitled to appointed counsel. Davis did not have a lawyer until this court issued a certifi-

cate of appealability, see 28 U.S.C. §2253(c), and appointed counsel for him under the Criminal Justice Act, 18 U.S.C. §3006A(a)(2)(B). The likelihood that mentally marginal prisoners will lack the assistance of guardians or lawyers means that, for them, it is especially important to follow the norm under which incompetence permits tolling.

What sort of mental limitations justify tolling? Davis wants us to hold that anyone whose shortcomings play a causal role in a delayed filing is entitled to tolling. If that were the law, however, then almost everyone who failed to meet a statutory deadline would be entitled to tolling, and statutes of limitations would be eviscerated. Most people who file too late do so because they don't realize that they have potentially sound legal claims or do not know what deadline applies to those claims. Many persons of normal intellect are unable to cope with the legal system. Yet decisions such as *United States v. Kubrick*, 444 U.S. 111 (1979), reject arguments that to *explain* an untimely filing by reference to the plaintiff's limited knowledge or ability is to *excuse* it. Kubrick argued that he did not know that he had a valuable legal claim until a physician told him so; the Supreme Court held that this did not justify an untimely suit. Similarly, it is established that prisoners' shortcomings of knowledge about the AEDPA or the law of criminal procedure in general do not support tolling. See, e.g., *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000); *Taylor v. Michael*, 724 F.3d 806, 811–12 (7th Cir. 2013). If a deficit of legal or medical knowledge that causes an untimely filing does not justify tolling, then why should a general inability to cope with matters legal? Something more than but-for causation is essential.

One candidate for the "something more" in criminal law is inability to understand the charges and assist in one's own defense. A person whose mental limitations disable him to this extent can't be tried—though a person who can understand the charges and assist counsel also can take other steps, including waiving counsel and pleading guilty. See *Godinez v. Moran*, 509 U.S. 389 (1993). Davis must have had at least this much ability in years past, because the state court permitted him to plead guilty. He has never contended that allowing him to enter a guilty plea violated the Constitution. (His argument in this proceeding is that his lawyer let him down by not showing up at a plea-bargaining session, leaving him to negotiate unassisted.)

Another potential candidate for distinguishing persons who are entitled to tolling from other prisoners who are not is the line the Supreme Court has drawn in capital litigation between those who can understand the charges and proceedings well enough to be executed, and those who can't. See *Atkins v. Virginia*, 536 U.S. 304 (2002). The Supreme Court may address this subject again in *Hall v. Florida*, No. 12-10882, which was argued on March 3, 2014. It is not clear how this doctrine differs from one dealing with competence to be tried (or plead guilty); *Hall* may say more about that.

Perhaps there are still other candidates for a way to determine what sorts of mental disability excuse delay in filing a collateral attack. The parties' briefs on this appeal do not cover that subject thoroughly enough for us to be confident that we understand the range of possibilities—and if we don't know what options are available, we cannot choose intelligently among them.

Davis contends that we need not choose, because he is *so* limited mentally that he is entitled to tolling under any possible rule. A report prepared by Wisconsin's prison system in 2007 concludes that he has an IQ of 49, is illiterate and uneducable, and cannot cope with any legal subject. Davis wants us to take it as established that these conclusions are correct—but if they *are* correct, then why did the state judiciary let him plead guilty? Perhaps he was feigning incompetence during the tests but presented himself differently to the judge. Or perhaps he has limited abstract intelligence but greater concrete intelligence. We held in *Young v. Walls*, 311 F.3d 846 (7th Cir. 2002), that even persons with serious mental disabilities may have enough concrete awareness to be able to waive constitutional rights. It is improper to leap from one IQ test to a conclusion that a particular person is unable to understand and protect his own legal interests.

Because this case must be remanded so that the district court can take evidence and determine just what Davis's abilities are, we refrain from articulating a legal standard. The parties should brief that subject in the district court, and we then can tackle it on the next appeal with a greater likelihood of reaching a sound conclusion.

The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.